A03A1306. SACKS et al. v. JORDAN et al.
A03A1307. CRUMP et al. v. JORDAN et al.
(595 SE2d 571)

MILLER, Judge.

Bobby Todd Jordan applied to have his property line with adjoining landowners processioned. Although the resulting processioners' return and surveyor's plat filed with the probate court determined a property line adverse to Jordan's interests, he did not file a protest. Five years later, Jordan filed an independent action in superior court to determine title and boundaries. After a bench trial, the trial court found that the property line determined by the processioners was inaccurate and concluded that the accurate property line resulted in more acreage to Jordan. In Case No. A03A1307, the adjoining landowners who lost acreage under the superior court decision have appealed, claiming that the processioning was res judicata and should have conclusively resolved the issue in their favor, and further that (1) the court erred in not finding that Jordan lost the right to bring the action under the doctrine of laches and (2) the evidence did not overcome the presumption of correctness of the processioners' return. In Case No. A03A1306, two other parties (landowners who had jointly purchased a nearby portion of Jordan's property and whose property line was affected by the validity of the processioning) have also appealed on similar grounds. We hold that res judicata did not attach to the unprotested processioners' return and that evidence supported the court's findings regarding laches and regarding the inaccuracy of the processioners' return. Accordingly, we affirm.

Construed in favor of the trial court's findings, the evidence showed that in 1986 Jordan purchased 119 acres of land that adjoined certain land owned by the Crump family. The line dividing the two tracts at a key juncture was described only as the "Old River

Run." In 1991 Jordan filed an application in the local probate court for a processioning to have the property lines surveyed and the boundaries marked anew.

The duly appointed processioners and the county surveyor conducted a processioning and had extreme difficulty in locating the "Old River Run." Their best efforts resulted in a relatively straight line between two natural tree landmarks. They then received an unauthenticated old plat that indicated a different line between the two landmarks (showing the river boundary as having two 90-degree turns), and they decided to use that line as the final boundary, which they so marked and submitted to the probate court with their return in 1992. The difference between the first and second lines was about seven acres, with the second line (used in the official return) indicating that those acres belonged to the Crump tract. Jordan did not protest the return, which was received and approved by the probate court.

Jordan then sold the property (excepting out the disputed acreage) to a third party, which property eventually was transferred to Robert and Geraldine Sacks. In 1998 (more than five years after the processioners' return), Jordan filed in superior court a declaratory judgment action against the Crump family to have the boundary line determined and prayed that title to the disputed acreage be vested in him. Claiming that their interests would be adversely affected by any decision overturning the processioners' return, Robert and Geraldine Sacks successfully intervened in the action as defendants.

During the ensuing bench trial, the court received the processioners' return and survey plat into evidence as well as other plats and surveys. Testimony came from Jordan, the processioners, the county surveyor, and from experts and others who testified for and against the boundary set forth in the processioners' return. At the end of the trial, the Sackses moved to dismiss the action on the ground that the unprotested processioners' return was res judicata and could not be overturned except through a motion to set aside filed within three years of the return. In a detailed final judgment, the court denied the motion and then found in Jordan's favor on the merits, explaining that the evidence overcame the presumption of correctness attached to the processioners' return and declaring that the correct boundary between the Jordan and Crump properties was the relatively straight line initially determined by the processioners.

In Case No. A03A1306, Robert and Geraldine Sacks have appealed, arguing that the court erred in denying their motion to dismiss and that laches precluded any finding on the merits in favor of Jordan. In Case No. A03A1307, the Crump family appeals, making similar arguments and also urging that the evidence did not overcome the prima facie correctness of the processioners' return.

1. A landowner in rural Georgia may apply to the local probate court to have his land resurveyed and its lines re-marked by the duly appointed processioners of the district. OCGA § 44-4-2. The county surveyor and the processioners bear the obligation of arriving at the true lines and tracing out and plainly marking same. OCGA § 44-4-3. The surveyor makes out and certifies a plat of the true lines. Id. The processioners file the surveyor's plat and a return of their acts with the probate court. OCGA § 44-4-4. In all boundary disputes, the surveyor's certified plat and the lines so marked "shall be prima facie correct; and the certified plat shall be admissible in evidence without further proof." OCGA § 44-4-3. Landowners dissatisfied with the lines run and marked by the processioners and by the surveyor have 30 days after the return is filed to file a protest with the probate court, which court will then forward the material to the superior court for a trial and adjudication. OCGA § 44-4-9.

Here no party filed a protest to the return. Absent a protest, the Crump family and the Sackses argue that the return became the binding judgment of the probate court and was res judicata as to the location of the boundaries (since it was not set aside under OCGA § 9-11-60 (d) in a motion filed within three years of the return).

This argument misapprehends the concept of processioning. Processioning is not a judgment; it is a quick and inexpensive remedy that (as a rough and ready substitute for the more violent forms of self-help) has a limited scope. Hinkel, Pindar's Ga. Real Estate Law, § 13-51, p. 658 (5th ed. 1998); see *Ga. Talc Co. v. Cohutta Talc Co.*, 140 Ga. 245, 247 (3) (78 SE 905) (1913) ("a summary proceeding"). The certified plat resulting from a processioning is not a conclusive adjudication of the boundary question but is only *evidence* (admissible in a court proceeding) that is deemed prima facie correct. OCGA § 44-4-3; see *Tucker v. Roberts*, 151 Ga. 753, 760 (2) (108 SE 222) (1921); *Chambers v. Netherland*, 145 Ga. 52 (1) (88 SE 545) (1916); *McGraw v. Crosby*, 129 Ga. 780, 784-785 (2) (59 SE 898) (1907). Only if a landowner files a protest to the processioners' return may the resulting adjudication in superior court become conclusively binding on all notified adjoining landowners as a final resolution of the boundaries and title. See *Tucker*, supra, 151 Ga. at 760 (2); *Eubank v. State*, 105 Ga. 612, 614 (31 SE 741) (1898); *Howland v. Brown*, 92 Ga. 513 (17 SE 806) (1893). Absent such a protest, the processioners' return and the surveyor's certified plat are nothing more than presumptively correct items of evidence that are probative in a subsequent adjudicatory proceeding on the question but have themselves no res judicata effect. *Holmes v. Blount*, 245 Ga. 757, 758 (267 SE2d 228) (1980); *Wisenbaker v. Warren*, 196 Ga. App. 551, 552 (2) (396 SE2d 528) (1990). They are not judgments of the probate court that can only be overturned through a motion under OCGA § 9-11-60 (d),

but simply constitute an admissible prima facie showing of the boundary that is subject to being rebutted or overcome through other evidence. See *Chambers*, supra, 145 Ga. at 52 (1); *McGraw*, supra, 129 Ga. at 784-785 (2). Contrary to defendants' contentions, these presumptions and procedure apply even if the applicant for the processioning is the one challenging the results of the processioning. See, e.g., *Overstreet v. Dixon*, 107 Ga. App. 835, 837 (1) (131 SE2d 580) (1963); *Woodcock v. Rayonier, Inc.*, 97 Ga. App. 133, 134 (2) (102 SE2d 93) (1958).

The evidence here allowed the trier of fact to find that Jordan's evidence overcame the presumption of correctness of the processioners' return. Based on their observations while walking the land, the processioners initially concluded that the first line was the most accurate boundary showing the "Old River Run." This line more closely gave Jordan the 119-acre amount referenced in his deed. Aerial photographs and old surveys showed an old riverbed that did not take two 90-degree turns (which turns were reflected in the second processioners' line). An expert surveyor testified that the first processioners' line was more accurate based on distances and beginning and ending points. Finally, the old plat on which the processioners relied in drawing the second line was unauthenticated, did not show the identity of the surveyor who prepared the plat, and reflected the river run with two sharp 90-degree turns, which the trial court could construe to be an unlikely circumstance. The trial court did not clearly err in discrediting the old plat and in finding that the prima facie evidence was overcome and that the first processioners' line was more accurate. See *Wilbanks v. Arthur*, 257 Ga. App. 226, 227 (570 SE2d 664) (2002) (trial court's findings after a bench trial are upheld unless clearly erroneous).

2. Similarly, the question of laches in Jordan's five-year delay (following the processioners' return) in bringing this suit was a question for the trier of fact. See *Redfearn v. Huntcliff Homes Assn.*, 243 Ga. App. 222, 226 (2) (531 SE2d 376) (2000). Here Jordan testified that he lacked the funds and the evidence to bring suit sooner. In light of this evidence and the lengthy time periods associated with land matters (i.e., adverse possession without color of title — twenty years, see OCGA § 44-5-163; adverse possession under color of title — seven years, see OCGA § 44-5-164), we cannot say that the trial court clearly erred in balancing the numerous factors under laches to determine the fairness of the competing interests. See *Redfearn*, supra, 243 Ga. App. at 226 (2). "On the basis of all matters of record, there is at least slight evidence from which a [trier of fact] could find" that laches did not require a decision in appellants' favor. Id.

*Judgment affirmed in both cases. Smith, C. J., and Ruffin, P. J., concur.*

*Robert C. Sacks*, for appellants (case no. A03A1306).
*Alton M. Adams*, for appellants (case no. A03A1307).
*Healy & Svoren, Timothy P. Healy*, for appellees.